## In re Burkett's Estate.

(Division A. March 6, 1939. Suggestion of Error Overruled May 29, 1939.)

[186 So. 834. No. 33582.]

Sullivan & Sullivan, of Hattiesburg, for appellant.

**E. C. Fishel,** of Hattiesburg, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

Martha Ann Burkett died in February, 1938, and Elizabeth C. Baylis was appointed administratrix of her estate. Mrs. H. H. Burkett probated a claim against this estate for services—care and nursing rendered the decedent over a period of several months during which time the decedent was ill. This claim was contested by the administratrix, and the court below after hearing the evidence relative thereto ordered it to be paid.

The deceased was over eighty years of age, had never been married, and prior to 1937 lived in her own home. The claimant and her husband lived with her for several years until the latter part of 1936 when they established a home of their own. In the spring of 1937, the deceased left her home, entered that of the claimant and her husband, became ill shortly thereafter and died in February, 1938. The claimant's husband is a nephew of the deceased and is one of several beneficiaries in a will made by her in 1928. The administratrix offered but was not permitted to prove that the deceased was in the claimant's home under an agreement with her husband; that the deceased would build an additional room to the house in which the claimant and her husband were living and she would be cared for by them without charge except that she was to pay $2.50 per week for a woman "to help about the place;" which agreement the deceased carried out. The conclusion we have reached on the remaining evidence renders it unnecessary for us to review this ruling.

The evidence discloses that the deceased lived with the claimant and her husband as a member of their fam-

ily. During forty days of her illness she employed and paid a trained nurse to attend her, and during the whole of her illness the claimant rendered her such services as a practical nurse would render. A sister of the deceased testified that before the deceased went to the claimant's home, she had a conversation with the claimant relative thereto and the claimant said that it would not cost the deceased a cent, "that I am sorry for her and want her." There was no evidence of any agreement by the deceased to pay the claimant for the services, nor that the claimant in any way indicated to the deceased that she expected to be paid therefor. In the testimony of the trained nurse, the following questions and answers appear:

"Q. During the time you was there waiting on her, did you hear her give any expression about wanting Mrs. H. H. Burkett paid? A. Several times she would get her pocket book out and offer to pay us both. "Q. She expressed a willingness to pay Mrs. H. H. Burkett? A. Yes."

Another witness, a lady friend of the family, said on one occasion she was talking with the deceased "about her being sick, and she said she wanted to do something for Mr. and Mrs. Burkett—they were so good to her, she wanted to pay them for what they were doing for her." The following questions and answers also appear in the testimony of this witness:

"Q. You heard her say that she wanted Miss Carrie taken care of and Mr. Burkett? A. Yes, that is what she said; that Carrie had been so good to her she wanted to pay her for it.

"Q. Did she say 'Carrie,' or 'Those children?' A. She said 'Herbert' and 'Those children' . . . she meant Carrie and Herbert" (Mr. and Mrs. H. H. Burkett).

Another witness, a minister of the gospel, said: "I recall two occasions she (the deceased) talked to me about it and one occasion was before Mrs. Chappel

nursed her, and she said she thought that Brother and Mrs. Burkett ought to have her property. And the other time was after Mrs. Chappel had discontinued her nursing and Mrs. Burkett was nursing her, and she said she thought that Mrs. Burkett ought to be paid for her services." Another witness said that the deceased told her that she wanted "to reimburse her (the claimant) for everything she has done . . . for her services she had rendered."

There being no express promise by the deceased to pay for the services rendered her, the claimant can recover only by proving: (1) That she rendered the services with the expectation of receiving compensation therefor; and (2) (a) That the deceased knew of this expectation and accepted the services; or (b) accepted the services "under circumstances which would indicate to a reasonable man that they were offered with the expectation of compensation." 1 Rest. Contract, sec. 72, par. A.; 1 Williston on Contracts (Revd. Ed.), secs. 36 and 91; 2 Elliott on Contracts, sec. 1365. As between near blood relatives and between members of the same household not blood relatives but living together in a relationship similar to that between blood relatives, where services of the character here under consideration are rendered for each other a prima facie presumption, or more accurately an inference of fact, arises that they were rendered without expectation of compensation therefor. 2 Elliott on Contracts, sec. 1366; 1 Williston on Contracts, (Revd. Ed.), sec. 91A; Note Hodge v. Hodge, 47 Wash. 196, 91 P. 764, 11 L. R. A. (N. S.) 873, page 887. This presumption prevails unless overcome by the evidence. Hoyle v. Smith, 113 Miss. 729, 74 So. 611.

The evidence here is barren of any indication that the claimant intended to charge the deceased for the services rendered to her, and the evidence that she had said that it would not cost the deceased a cent to live with her is without conflict. In addition, the deceased offered on one occasion to pay the claimant for her services, which

offer the claimant did not accept, and said nothing then indicating that she expected compensation for her services. True it is that the evidence discloses that the deceased appreciated the rendition of the services and thought the claimant should be compensated therefor and (viewed most strongly for the claimant) expressed an intention to so do. This thought and intention of the deceased was not communicated to the claimant; consequently, she could not have rendered the services in reliance thereon. The deceased may have intended to compensate the claimant for her services, but no obligation so to do arose unless she knew or ought to have known that the services were being rendered on the expectation of compensation therefor. Authorities supra.

The decree of the court below will be reversed and a decree will be rendered here disallowing the claim.