445 So.2d 836 (1984)
In re ESTATE OF Sam ALEXANDER, Deceased.
Susie ALEXANDER, Administratrix
v.
Margie ALEXANDER, a/k/a Margie Moye.
No. 54040.
Supreme Court of Mississippi.
February 15, 1984.
David A. Smith, Columbus, for appellant.
Charles L. Culpepper, Thomas C. Harvey, Jr., Columbus, for appellee.
Before BROOM, P.J., and ROY NOBLE LEE and DAN M. LEE, JJ.
*837 BROOM, Presiding Justice, for the Court:
Services rendered "as a faithful spouse" are grounds upon which appellee, Margie Alexander, sought an "equitable lien entitling her to full use and occupancy" of the residence of Sam Alexander, deceased, for as long as Margie lives or occupies the property. Margie became married many years ago to one George Moye and without any divorce began to live with Sam Alexander as if married to Sam. Susie Alexander, administratrix of Sam's estate, appeals from the decree of the Chancery Court of Lowndes County, which in effect granted Margie a life estate to Sam's homestead property. We reverse on direct appeal.
Argument of the Administratrix is that the lower court erred "in impressing an equitable lien against the property of the decedent Sam Alexander for the benefit of the respondent, Margie Alexander... ."
In controversy is the dwelling house (deceased Sam Alexander's homestead) occupied by Margie and Sam during the last twenty years of his life. Without divorcing George Moye, her husband, Margie lived with Sam Alexander approximately thirty years from about 1946 until Sam's death in 1980. These proceedings were commenced in the Chancery Court of Lowndes County by petition of Sam's two sisters, Susie Alexander and Pearl Alexander, joined in by a nephew, William Alexander. The three of them, along with a second nephew, Willie Mack Shelton, appear to be Sam's sole and only heirs at law. The petition successfully sought appointment of Susie as administratrix.
Margie Alexander (appellee) responded to the petition by pleading that she was entitled to an equitable lien on Sam's house. In answer to interrogatories, she stated that she had previously entered into ceremonial marriages with two men, the first of whom died prior to her second marriage. She (though not divorced from George Moye) averred that for many years she had lived with Sam and shared his name, assets and liabilities. Her testimony was that she did their cooking, washing, and ironing during those years, and that "we was considered man and wife". They used his wages and her wages (working for others) to pay their living expenses. Sam made the payments on the house until he got sick, after which time she paid them. Nowhere in her testimony did Margie establish or even estimate the amount of money she paid on the house which is titled *838 in Sam's name. He was hospitalized for a time and then returned home, where Margie nursed him until his death. According to her, Sam's relatives ignored him during his illness except for a nephew who helped with him on weekends for over a year. Margie took care of the funeral and had Sam buried "on my mother's square ...". She testified that she expected to live the rest of her life "in that house where I holp (sic) him pay for." Her and Sam's relationship had its inception when he moved in with her while she was living in her grandmother's house.
Appellant's brief points to the lack of evidence that the deceased, Sam Alexander, knew of any expectation of Margie to be paid when he accepted her services. The transcript is also barren of evidence that he accepted her services under circumstances which indicate to a reasonable man that her services were offered with the expectation of compensation. In re Burkett's Estate, 185 Miss. 354, 186 So. 834 (1939), states:
The deceased may have intended to compensate the claimant for her services, but no obligation so to do arose unless she knew or ought to have known that the services were being rendered on the expectation of compensation therefor.
185 Miss. at 360, 186 So. at 835. Hoyle v. Smith, 113 Miss. 729, 74 So. 611 (1917), involved a sister who took care of her infirm, elderly sister during her last years and subsequently sought compensation for her services. This Court held there was no contract, express or implied, to compensate the claimant sister for her services out of the estate's corpus. In denying recovery from the estate of the deceased sister, our opinion states:
The claim of Mrs. Smith might naturally arouse one's sympathy and appeal to one's sense of justice. But there can be no obligation on the part of the estate here proceeded against in the absence at least of an implied obligation or contract. The proof shows without dispute that the two old sisters, Mrs. Smith and Miss Hoyle, lived together upon their joint property as members of the same household, and that the attention and care which Mrs. Smith lavished upon her invalid sister was prompted by feelings of natural love and affection, and that her services as caretaker were not rendered in pursuance of any contract whatever or with any expectation of compensation. During the many years prior to the death of Miss Hoyle, Mrs. Smith rendered no bill for services or support, and this claim is now presented for the first time long after Miss Hoyle's death. If Miss Hoyle intended for Mrs. Smith to have her property, she could have easily executed a deed or will. Our court, in Bell v. Oates, 97 Miss. 790, 53 South. 491, in speaking of this character of claim, said: "Claims of the character of the one here involved, brought up for the first time after the death of the decedent, are looked upon by the courts with disfavor." In order to establish one, "the evidence must clearly establish a contract, express or implied, between the claimant and decedent, providing therefor."
113 Miss. at 734-35, 74 So. at 612-13.
On the issue of whether the meretricious relationship between Sam and Margie precludes equitable relief in her favor, no Mississippi case precisely in point has been cited or called to our attention. Recently the Supreme Court of California in Marvin v. Marvin, 18 Cal.3d 660, 557 P.2d 106, 134 Cal. Rptr. 815 (1976), a case involving a woman's "palimony" claim against a movie star, dealt with a similar issue and stated:
The courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of meretricious sexual services ... In the absence of an express contract, the courts should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case.
*839 18 Cal.3d at 665, 557 P.2d at 110, 134 Cal. Rptr. at 819. The Marvin case suggests several theories under which an agreement between Margie and Sam Alexander could be implied. Marvin seems to have fashioned a judicial remedy upon some kind of a "tacit understanding" between the parties about some expected "monetary reward" to Margie. Such an understanding does not appear here as between Margie and Sam.
Hewitt v. Hewitt, 77 Ill.2d 49, 31 Ill.Dec. 827, 394 N.E.2d 1204 (1979), involved a claim similar to the one asserted here. In rejecting the claim, the Illinois court stated that to award equitable relief under such circumstances would contravene public policy.
Chrismond v. Chrismond, 211 Miss. 746, 52 So.2d 624 (1951), and Taylor v. Taylor, 317 So.2d 422 (Miss. 1975) are factually quite dissimilar and thus not controlling. In both of those cases the litigation was brought by a woman against the man with whom she had entered into an actual ceremonial marriage. In the present case, there was not even any attempted legal ceremonial marriage but a mere "live-in" relationship which cannot be allowed to negate the law of descent and distribution. As contradistinguished from Chrismond and Taylor, in the present case the suit is not against a living so-called husband who mistreated or attempted to mistreat the woman (Margie). Here the man is dead and the suit is an attempt to gain a part of his estate. The Taylor opinion states the "separation cast her adrift", but here there is no separation except by death, and in no wise would Margie be cast "adrift" because by her own testimony she owns her grandmother's former house which is rented. As was true in Aldridge v. Aldridge, 116 Miss. 385, 398, 77 So. 150, 151 (1918), the present litigant, Margie, "to all intents and purposes was simply his (Sam Alexander's) mistress."
Georgia's Supreme Court recently decided a case where a cohabitant filed an action seeking her portion of purchase money interest in a house. Rehak v. Mathis, 239 Ga. 541, 238 S.E.2d 81 (1977). There the court held that the fact that the parties were unmarried and cohabiting would constitute immoral consideration in an agreement to live together, and denied relief to the claimant cohabitant.
Beal v. Beal, 282 Or. 115, 577 P.2d 507 (1978), was a recent case wherein a claim similar to that asserted here was upheld based upon intent of the parties. Other cases scattered across this nation show diverse theories used by different courts in deciding controversies similar to that before us here.
We think the logical view is that stated by a Michigan court. Carnes v. Sheldon, 109 Mich. App. 204, 311 N.W.2d 747 (1981). The following, excerpted from Carnes, expresses our view:
We are of the opinion that public policy questions of such magnitude are best left to the legislative process, which is better equipped to resolve the questions which inevitably will arise as unmarried cohabitation becomes an established feature of our society. While the judicial branch is not without power to fashion remedies in this area, see, e.g., Tyranski [v. Piggins, 44 Mich. App. 570, 205 N.W.2d 595] supra, Roznowski [v. Bozyk, 73 Mich. App. 405, 251 N.W.2d 606], supra, and Walker [v. Walker, 330 Mich. 332, 47 N.W.2d 633], supra, we are unwilling to extend equitable principles to the extent plaintiff would have us do so, since recovery based on principles of contracts implied in law essentially would resurrect the old common-law marriage doctrine which was specifically abolished by the Legislature. Although, as previously noted, the Marvin [v. Marvin, 18 Cal.3d 660, 557 P.2d 106, 134 Cal. Rptr. 815] Court denied that the effect of its decision would be to resurrect the principle of common-law marriages, commentators have been less certain.
109 Mich. App. at 216-17, 311 N.W.2d at 753.
Earlier, in Creasman v. Boyle, 31 Wash.2d 345, 196 P.2d 835 (1948), the Supreme *840 Court of Washington succinctly stated:
It has been declared to be a rule of law in this state that property acquired by a man and a woman not married to each other, but living together as husband and wife, is not community property, and, in the absence of some trust relation, belongs to the one in whose name the legal title to the property stands.
31 Wash.2d at 351, 196 P.2d at 838.
Having carefully studied the briefs and oral arguments made, we think that if a remedy is to be given to a cohabitant situated as was Margie in this case, the Legislature should provide the remedy.[1] Of course, it is obvious that had Sam wanted Margie to have an interest or right to his property, a simple will would have been appropriate but none was executed. A deed or contract would also have sufficed. We think that the chancellor exceeded his discretion in his attempt, noble and compassionate as it was, to fashion a remedy favorable to Margie. As was true in Hoyle v. Smith, supra, Margie's claim naturally arouses our sympathy, but absent any evidence of "an implied obligation or contract" the record before us fails to establish any proper basis for relief to her. Of course, equity is a laudable goal in any case, but equity generally must follow established law. At oral argument Margie's counsel conceded that the record is barren of evidence that Margie and Sam had any agreement that she would be compensated for her services.
By way of cross-appeal, Margie asserts that the Chancery Court wrongfully dismissed her petition to revoke letters of administration issued below. We find no merit to the cross-appeal, and affirm the chancellor's refusal to revoke the letters of administration.
REVERSED AND RENDERED AS TO DIRECT APPEAL; AFFIRMED AS TO CROSS-APPEAL.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE and PRATHER, JJ., concur.
DAN M. LEE, BOWLING, HAWKINS and ROBERTSON, JJ., dissent.
DAN M. LEE, Justice, dissenting:
Occasionally, a court's well-intentioned efforts to see that a rule of law is promoted results in principles of justice being ignored. The inequity that results from the majority's opinion makes it evident that this is one of those instances. Because I believe that the remedy fashioned by the chancellor was eminently correct in assessing where the real equities of this case lie and in preventing a travesty of justice, I must respectfully but adamantly dissent.
For centuries of Anglo-American jurisprudence the chancellor has stood for equity, fairness and good conscience. As all first year law students are taught, the role of the chancellor came about as an attempt to provide solutions to problems the law did not adequately address. The chancellor was the keeper of the king's conscience, the guardian against injustices that overly strict or dogmatic interpretations of law created. From these beginnings the concept of the chancery court has developed and along with it several maxims of equity to guide that development.
These maxims or principles have so often been discussed that they are familiar to anyone versed in chancery practice; however, because they have been ignored by the majority's opinion, I will set out some of the authorities' comments. From Griffith's Mississippi Chancery Practice, 2nd Ed. come the following:
Section 32. [T]here are the requirements that the party who invokes the jurisdiction of chancery coming as a complainant therein must come with clean hands, and that in asking the court to take cognizance of his suit in equity he shall on his part do any equity that in *841 conscience his case requires that he should do. It is more than a trite phrase that a court of equity is a court of conscience; and it is immaterial what rights a party could assert in a court of law,  a court of equity will limit him to those rights of which he could conscientiously avail himself.
Section 43. He who seeks equity must do equity. It is one of the oldest of equity principles that when a party seeks the interposition and aid of a court of chancery as against his adversary, the court in extending its aid will require as a condition thereof that the complaining party shall accord and render unto the adversary party all of the equitable rights to which the latter is entitled in respect directly to the subject matter of that suit, and this is true even as to many of those things which the defendant could not compel by an independent suit. It is through the operation of this maxim that tender or the equitable equivalent thereof is required; the restoring of benefits received and the placing of the opposite party in statu quo, and the like; and that without the necessity of cross-demand, the decree often may be so drawn and rendered that each party may be given, in respect to the identical transaction, what in equity and good conscience he ought to have and in the appropriate manner in which he ought to have it  settling the whole matter by making any decree at all in complainant's behalf conditional upon the allowance of the cognitive rights of the defendant; provided, these latter rights are so intimately connected with the transaction as to be equitably inseparable therefrom, and provided further that no express principle of law stands in the way.
Section 615. It is a well understood feature of equity that when a party resorts to a court of chancery for redress he thereby submits himself to such equitable conditions as directly connect themselves with the subject, and that he may be required to do equity as a condition to the allowance of relief: wherefore, the decree may be expressly so drawn that the relief granted shall be on condition that equitable terms specified in the decree shall be binding on the complainant.
(All Emphasis Added)
From 21 Am.Jur.2d Equity come the following:
Section 23. It is a generally recognized principle that equity will exert its authority and grant its remedy to prevent injustice where other courts are helpless, but will withhold its remedies if the result would be unjust.
Section 25. It has been said by a noted jurist that if the hardship is strong enough equity will find a way of granting relief, although a formula of inaction may seem to bar the path. Under certain circumstances equitable relief may be denied where the relief posted great hardship on the defendant with little or no benefit to the plaintiff.
Section 134. As a corollary of the maxim that he who seeks equity must do equity, courts of equity have for a long time granted relief upon such conditions as are just and proper and demanded by the exigencies of the circumstances... . The court may thus protect and give effect to the rights of one party while awarding relief to the other, and in so doing the court is not restrained by strict legal rights.

(All Emphasis Added)
Let us now examine the circumstances surrounding the instant dispute with an eye for locating where the equities and justice lie. Margie and Sam Alexander lived together in excess of 33 years. As the chancellor found, they were not married because they were ignorant of the fact that Margie could obtain a divorce from a husband who had previously deserted her because his address was unknown. Still, they lived together as man and wife, each considering and treating the other as a partner in the journey through what we all realize is but a brief earthly existence. Together they worked to buy the property in *842 question, each contributing their separate incomes towards the purchase price. They tended each other in good times and bad, and when Sam entered his last illness it was Margie who nursed him. Ultimately it was Margie who buried him. During all of this time, the appellants were no where to be found. They came forward only when it became apparent that they might extract some personal gain from Sam's estate.
The majority opinion makes the assertion that there was no evidence that Margie expected to be paid for her services or that Sam expected to pay her. Such comments amount to nothing more than a straw man set up for the purpose of knocking down without having to give a true assessment of the couple's relationship. Of course there was no expectation of payment for services! Margie and Sam clearly considered themselves man and wife, sharing equally in both their assets and liabilities. They spent over 33 years together, sharing without expecting payment. At least they were joint adventurers. McCartney v. McKendrick, 226 Miss. 562, 85 So.2d 164 (1956).
The majority completely ignores the legitimate interest Margie has in the household she and Sam worked together to acquire. Also, the reference to Margie as "simply his mistress" is inappropriate to the facts of this case.
It must be remembered that the chancellor had the discretion to mold his remedy to meet the equities of the situation, with justice as his polestar. Certainly the solution arrived at here was fashioned with those standards in mind. This is evident from a reading of the chancellor's opinion, a portion of which we quote:
It is admitted by Margie: she knew that she was not divorced, and her understanding was that she could not get a divorce because she did not know the whereabouts of George. The routine legal questions involved in this cause have relatively simple answers to those who are regularly represented by counsel, but the court would take judicial notice that they are uneducated and that the intelligence level of the parties before the court is such that they are unlearned in the law and are unlearned in the normal business and commercial activities. The court would further take judicial notice that the custom and mores to which they subscribe place no connotation on the absence of a ceremonial marriage, but rather give recognition to strong personal obligations, each to the other. The court knows of no other duties or services that this woman could have rendered to the decedent that could have been characterized of a more dutiful wife. To now deprive her of the residence that she has occupied for more than 20 years as her home would be a travesty of justice. Conceded, she has no adequate remedy at law. She cannot be recognized as the common law wife of Sam Alexander; she is not his heir; but nevertheless, she performed the services of a faithful spouse to Sam for a period of more than 30 years. (Emphasis Added)
Certainly the chancellor was following guideposts of equity and our decision in Taylor v. Taylor, 317 So.2d 422 (Miss. 1975). In Taylor we stated:
The facts in this case demonstrate without question that the chancellor did what a decent regard for the sensibilities of humanity demanded. These people lived together and shared the vicissitudes of life for 18 years. The separation case her adrift just as surely as if she had been his lawful wife. The chancellor appears to have decided that the strict letter of the law ought not to require him to ignore that he was dealing with human beings. (Emphasis Added)
Taylor v. Taylor, 317 So.2d at 423.
The chancellor's creation of an equitable lien or the granting of an equitable use of the property for the extent of Margie's life takes into consideration both Margie's interest and those of the appellants. As stated above, the appellants must be prepared to yield to whatever equity Margie has before they are permitted to petition a *843 court of equity for relief. While justice should be blind, we must not be blind to it.
Therefore, based on all of the foregoing, I would affirm the decision of the chancellor.
BOWLING, HAWKINS and ROBERTSON, JJ., join this dissent.
NOTES
[1] Common law marriage was not asserted in this case for obvious reasons. Historically, as of April 5, 1956, such marriages were no longer allowed. Mississippi Code Annotated § 93-1-15 (1972).