# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CT-01939-SCT

*MONA CATES*

*v.*

*ELIZABETH SWAIN*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2010 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JONATHAN S. MASTERS |
| | ROBERT M. STEPHENSON |
| ATTORNEYS FOR APPELLEE: | JOHN THOMAS LAMAR, JR. |
| | DAVID MARK SLOCUM, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART, VACATED IN PART AND REMANDED - 05/02/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     Elizabeth Swain and Mona Cates cohabited from 2000 until 2006. After they severed the relationship, Swain filed an action seeking the repayment of funds she first had invested in property in Washington, which were then used to purchase a residence in Tate County. The chancellor rejected Swain's claim of a constructive trust or a resulting trust. The chancellor found that Cates had been unjustly enriched by Swain's contributions and awarded Swain a judgment in that amount. The Court of Appeals affirmed the chancellor's

rejection of the trust claim but reversed the decision of the chancellor, which was based on unjust enrichment. The Court of Appeals held that, because "cohabitation alone cannot form the basis of an equitable remedy between non-married cohabitants," the remedy of unjust enrichment was outside the bounds of the chancery court's equitable powers. *Cates v. Swain*, 2012 WL 1292639, at *7 (Miss. Ct. App. Apr. 17, 2012).

¶2. We find that the chancellor was empowered to award relief on the basis of unjust enrichment. We affirm the judgment of the Court of Appeals to the extent that it affirmed the chancellor's rejection of Swain's claim of a constructive trust or a resulting trust. We reverse the judgment of the Court of Appeals with regard to the unjust-enrichment award. Because the chancellor made a mathematical error in the calculation of the unjust-enrichment award, we vacate the chancellor's judgment in part, and remand the case to the chancery court for entry of judgment in the correct amount of $41,495.

## FACTS

¶3. In 2000, Swain and Cates met though an online dating service and began a relationship while living in different states. Swain was in the Navy and worked as an oceanographer, and Cates was a commercial airline pilot based in New York, New York, where she maintained a separate residence. During the entirety of her relationship with Cates, Swain was married and estranged from her husband. Swain testified that she remained married so that her husband could remain covered under her medical insurance policy, and so that Swain could claim a larger housing allowance from the Navy than she would have been entitled to as a single individual. Swain divorced after her relationship with Cates had ended.

2

¶4.     In late 2000, Swain transferred to Pensacola, Florida, and bought a house there. Cates provided $2,000 in earnest money toward the purchase of the house, residing there and in New York. Swain made the monthly mortgage payments and significantly paid down the principal. The two made improvements to the house.

¶5.     In 2003, Swain and Cates moved to Seattle, Washington. Cates bought a home in Seattle, where the two cohabitated. Swain sold the Florida home and received $32,000 in equity. Swain testified that she gave Cates a check for $34,000, representing the equity in the Florida home, plus an extra $2,000 from Swain's personal checking account as an investment. Swain testified that Cates used this money for the down payment on the Washington home, which Cates purchased for $191,000. In contrast, Cates testified that the check was repayment for undocumented loans. Swain and Cates made various improvements to the Washington home, and in 2005 the residence sold for $300,000.

¶6.     In 2005, Cates and Swain moved to Tate County, Mississippi, where Cates bought a home for $350,000, using the equity from the sale of the Washington home. Swain provided Cates a check for $5,000 with "closing costs" written in the memo line. She also paid $4,495 to carpet the home. Again, Cates characterized these expenditures as repayments for undocumented loans to Swain.

¶7.     Subsequently, the parties' relationship deteriorated, and Swain moved out in March 2006. On June 13, 2006, Swain filed a complaint against Cates, alleging that they had been cohabitants, that they had been involved in several joint ventures together, and that they had entered into an agreement for Swain to invest the proceeds from the sale of her Florida home into future purchases of real property in Washington and Mississippi. Swain requested that

3

the chancery court declare a constructive trust or a resulting trust in the Mississippi home, and that Cates had been unjustly enriched.

¶8.     The chancellor rejected Swain's claims of a constructive trust or a resulting trust. The chancellor found that Cates had been unjustly enriched by Swain's investment contributions. The chancellor rejected Cates's unsupported assertions that these contributions were merely loan repayments. The chancellor found Swain was entitled to recover the equity from her Florida home. The chancellor awarded Swain $38,000, minus $2,500.[1] The chancellor also found that Swain was entitled to recover the $5,000 she had tendered to Cates for closing costs on the Mississippi home and the $4,495 she had spent to carpet Cates's Mississippi home. The chancellor entered a judgment in the amount of $44,995 in favor of Swain.

¶9.     The Court of Appeals reversed. *Cates*, 2012 WL 1292639, at *9. The Court of Appeals reviewed our prior cases pertaining to unmarried cohabitants, and concluded that "Mississippi does not enforce contracts implied from the relationship of unmarried cohabitants." *Id.* at *4. Therefore, the Court of Appeals held that the chancellor had lacked the authority to grant the remedy of unjust enrichment. *Id.* at *7. This Court granted Swain's petition for certiorari to review the legal question of whether the remedy of unjust enrichment was available to Swain. We find that, in the particular circumstances, the chancellor did not err by granting relief on the basis of unjust enrichment.

**STANDARD OF REVIEW**

---

[1] As discussed later in this opinion, the chancellor's findings concerning these amounts were clearly erroneous. The testimony and exhibits reflect that Swain paid Cates $34,000 from the Florida home, and Cates paid Swain $2,000 in earnest money.

4

¶10.   This Court will not reverse a chancellor's fact-findings unless they were manifestly wrong, clearly erroneous, or the chancellor abused his discretion. *Smith v. Wilson*, 90 So. 3d 51, 56 (Miss. 2012) (quoting *Zeman v. Stanford*, 789 So. 2d 798, 801-02 (Miss. 2001)). We review questions of law de novo. *Smith*, 90 So. 2d at 56.

## ANALYSIS

¶11.   Unjust enrichment "applies to situations where there is no legal contract and 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 442 (Miss. 2012) (quoting *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)). In these circumstances, equity imposes "a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong." *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987). The amount of recovery for unjust enrichment is "that to which the claimant is equitably entitled." *Id.*

¶12.   The chancellor found that Cates had been unjustly enriched by Swain's contributions to the Mississippi home, which consisted of Swain's proceeds gained from the sale of her Florida home, the $5,000 Swain contributed at closing, and the $4,495 Swain had paid to carpet the Mississippi home. The Court of Appeals concluded that the remedy of unjust enrichment was not available to Swain as an unmarried cohabitant. *Cates*, 2012 WL 1292639, at *7. The Court of Appeals primarily relied upon *Davis v. Davis*, 643 So. 2d 931 (Miss. 1994), and *Estate of Alexander v. Alexander*, 445 So. 2d 836 (Miss. 1984), to reach this conclusion. *Cates*, 2012 WL 1292639, at *5.

¶13. We find *Davis* and *Alexander* to be distinguishable from this case. In *Davis*, the unmarried parties separated, and the woman, Elvis Davis, sought an equitable distribution of assets. *Davis*, 643 So. 2d at 932. Travis Davis had amassed considerable wealth, and Elvis argued that, by virtue of *her* efforts in her live-in, long-term *relationship* with Travis, she was entitled to an equitable division of assets. *Id.* at 933. The Court disagreed, noting that the Legislature has not extended the rights enjoyed by married people to those who cohabit. *Id.* at 936.

¶14. In *Estate of Alexander v. Alexander*, 445 So. 2d 836 (Miss. 1984), Margie and Sam Alexander had cohabitated for thirty years in a house owned by Sam. *Id.* at 837. When Sam died, Margie petitioned the court for a life estate in the residence. *Id.* The Court found that the Legislature had made no provision for a person in Margie's situation, and that "a mere *'live-in' relationship* . . . cannot be allowed to negate the law of descent and distribution." *Id.* at 839 (emphasis added). The Court also found that Margie could not recover under an implied-contract theory because no evidence established the existence of an implied contract between Margie and Sam. *Id.* at 840.

¶15. In both *Davis* and *Alexander*, the aggrieved party's claim for recovery was based upon a relationship. Both claims were for equitable division of property. In *Davis*, the Court rightly noted that cohabitation is prohibited as against public policy and that the Legislature has not extended the rights of married persons to cohabitants, nor do we today. In this case, Swain's claim was not one for equitable division. Swain made a claim, *inter alia*, for unjust enrichment based upon her monetary contributions to Cates's purchase of the Washington home and the purchase and improvement of the Mississippi home, which Cates retained after

6

Swain moved from the residence. Ultimately, the chancellor adjudicated the case on that theory of relief, and we find no error in the chancellor's legal conclusion.

¶16. True, as Presiding Justice Dickinson indicates in his separate opinion, Swain's unjust-enrichment claim was predicated on her assertion that Swain and Cates had entered into an agreement that Swain would invest the proceeds from the sale of her Florida home toward future home purchases. Thus, as Swain contended at trial, she should be entitled to share in the profits Cates earned from the use of Swain's money.

¶17. Swain claimed there was a mutual agreement between her and Cates that her Florida equity proceeds were to be used as an investment in both the Washington and Mississippi homes but offered no written evidence to support her testimony. Cates, who disputed Swain's version, claimed that she considered the funds provided by Swain to be reimbursement money for all the "loans" she had provided Swain, but she offered no written evidence to support her testimony. The only proof offered by either party for her claims was her respective testimony. The chancellor, essentially, accepted neither version. We find no abuse of discretion.

¶18. Instead, the chancellor focused on readily identifiable assets (or tangible benefits) each party conferred on the other, which, if retained by that party, would, under the circumstances, inequitably benefit (or unjustly enrich) that party. In essence, these particular benefits spoke for themselves, irrespective of how the parties attempted to characterize them after the fact at trial. The chancellor declined to treat these benefits as either investments or gratuitous gifts, as the Court of Appeals mistakenly construed our caselaw to require. Rather, the chancellor sought, as much as the evidence would allow, to restore the status quo and return the parties to the positions they had occupied before the transaction(s). This Court has held that an

7

unjust-enrichment award may consist of a refund, if that is equitable. *Adkins*, 513 So. 2d at 926. Our standard of review is abuse of discretion. *Smith*, 90 So. 3d at 56. Even if this Court, as an original matter, would have decided the matter differently, applying our standard of review, we conclude that the chancellor did not abuse his discretion in awarding Swain a refund, a form of restitution.

¶19. While the record reflects that Cates is a generous individual, the evidence she submitted in support of her claim, as found by the chancellor, simply did not carry much weight. We are mindful that the doctrine of unjust enrichment is not "a roving mandate [for a court] to sort through terminated personal relationships in an attempt to nicely judge and balance the respective contributions of the parties." *Slocum v. Hammond*, 346 N.W.2d 485, 491-92 (Iowa 1984). The chancellor astutely recognized that Swain's unjust enrichment claim did not request that the court undertake such a momentous task. We find that the chancellor did not err in granting Swain recovery under the theory of unjust enrichment.

¶20. We affirm the judgment of the Court of Appeals to the extent that it affirmed the chancellor's rejection of the constructive trust or resulting trust claim, reverse the judgment of the Court of Appeals regarding the unjust-enrichment award, affirm the chancellor's judgment in part, vacate it in part, and remand for entry of judgment in the correct amount of $41,495. We find that the chancellor clearly erred in his findings regarding the amounts Swain paid to Cates. Swain testified that she had tendered a $34,000 cashier's check to Cates from her equity in the Florida home, not a $38,000 check as found by the chancellor. Further, the record shows that Cates paid $2,000 in earnest money for the Florida home, not $2,500, as found by the chancellor. A receipt reflects that the amount Swain paid to carpet the

Mississippi home was $4,495, and she tendered a $5,000 check to Cates for closing costs on that home. These amounts total $41,495. Swain contests these amounts, and contends that the correct amount was $48,524.58. We affirm the chancellor's judgment in part, vacate the chancellor's judgment in part, and remand the case to the chancery court for entry of judgment in the amount of $41,495.

## CONCLUSION

¶21.    We find that the chancellor was empowered to grant relief to Swain based on the theory of unjust enrichment. We affirm in part and reverse in part the judgment of the Court of Appeals, affirm in part and vacate in part the judgment of the chancellor, and remand to the chancery court for entry of judgment in the amount of $41,495.

¶22.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE TATE COUNTY CHANCERY COURT IS AFFIRMED IN PART, VACATED IN PART, AND THE CASE IS REMANDED FOR ENTRY OF JUDGMENT IN THE AMOUNT OF $41,495.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. LAMAR, J., NOT PARTICIPATING.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶23.    The majority correctly holds that the chancellor should have granted Swain relief based on the equitable theory of unjust enrichment. But, because the majority merely modifies Swain's award without remanding to the chancellor for a fair and equitable determination of the amounts due, I dissent in part.

¶24. Unjust enrichment applies when "there is *no legal contract* but where the person sought to be charged is in possession of money or property which in good conscience and justice he [or she] should not retain but should deliver to another."[2] In such situations, we "impos[e] a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong."[3] The amount of recovery for unjust enrichment is "that to which the claimant is equitably entitled."[4]

¶25. Cates used $34,000 of Swain's money to purchase a home, which she later sold at a $109,000 profit. Rather than dividing the money with Swain, Cates took all the profits – plus another $9,495 from Swain – to purchase and carpet another home, which she titled exclusively in her name. It seems to me rather odd for the majority – claiming it is applying equitable principles – to conclude that Cates shall keep all the profits she earned from the use of Swain's money. Where is the equity in that?

¶26. The majority sidesteps the equity consideration by asserting that the chancellor merely restored the "status quo."[5] But allowing Cates to keep over a hundred-thousand dollars of profits she earned using Swain's money hardly fits my definition of status quo.

¶27. To be clear, I do not view Swain's contributions as "investments." And, there is no issue regarding loans, because the chancellor rejected the notion that Swain "loaned" the money to Cates. I simply disagree with the majority's view that this Court should forbid the

---

[2] *Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986) (emphasis added).

[3] *Id.*

[4] *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987).

[5] Maj. Op. at ¶ 18.

10

chancellor from even considering the profits that Cates made using Swain's money. This is precisely why the doctrine of unjust enrichment applies, and why the chancellor should be free to consider all of the facts and surrounding circumstances, and to exercise discretion to reach an equitable award.

¶28.    This case should be remanded for the chancellor to apply the doctrine of unjust enrichment and determine a *fair* and *equitable* amount of recovery, taking into consideration all factors, including the increase and/or decrease in value of the properties at issue, and not just the dollar amount of Swain's contribution. Because the majority forbids the chancellor from considering anything but the amount of Swain's contributions and merely corrects the chancellor's mathematical errors, I respectfully concur in part and dissent in part.

11